**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RECEIVABLES PURCHASING COMPANY, INC.,** | |
| **Plaintiff,** | Civil Action No. 3:09-CV-01339 |
| **v.** | **PLAINTIFF'S AMENDED COMPLAINT** |
| **ENGINEERING AND PROFESSIONAL SERVICES, INC.,** | |
| **Defendant.** | |

**COMES NOW,** the Plaintiff, RECEIVABLES PURCHASING CO., INC., and for its Amended Complaint against the Defendant herein, states and alleges as follows:

1.  That the Plaintiff, RECEIVABLES PURCHASING CO., INC., hereinafter referred to as "RPC" is, and at all times mentioned herein, was a domestic Arkansas corporation with its principal place of business being located in the Fort Smith District, Sebastian County, Arkansas.

2.  That the Defendant, ENGINEERING AND PROFESSIONAL SERVICES, INC., hereinafter referred to as "EPS" is, and at all times mentioned herein, was a foreign corporation, incorporated under the laws of Delaware and doing business in New Jersey.

3.  This matter was previously dismissed without prejudice and the Honorable Judge Robert Dawson directed that any further pleading related to the subject matter of this action shall be filed herein.  Plaintiff complied and re-filed in this Court; however, by Order filed January 5, 2010, Judge Garrett E. Brown, Jr., dismissed Plaintiff's Complaint but allowed Plaintiff to file an amended complaint not inconsistent with the Court's

1

decision within twenty (20) days.  In said decision, the Court ruled that according to a forum selection clause in the contract that is the subject of this litigation, the laws of the State of New Jersey would govern this action.  Venue is otherwise founded upon diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332, 1391(a), and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

4.  Defendant and RJS Utility Co., hereinafter referred to as "RJS", executed and entered into a contract entitled *GAS Connections Subcontract Agreement*, a copy of which is attached hereto and incorporated herein by reference as "Exhibit 1".  Said Agreement provided *inter alia* that EPS engaged RJS as a subcontractor to provide products, equipment and services to EPS in connection with EPS's obligations as prime contractor with the United States General Services Administration, Contract No. GS00T03AHD0003, in consideration for which RJS would be compensated "in an amount to be determined on an individual EPS Order basis."

5.  RJS fully and/or substantially performed its obligations under the *Subcontract Agreement*.  In particular, RJS provided products, equipment and services to EPS in accordance with Defendant's demands and/or the requirements of the Defendant's Prime Contract with the Government.

6.  All conditions precedent to the Subcontract Agreement, if any, have been performed or have occurred.

7.  On or about November 13, 2002, RJS sold, assigned, and transferred to the Plaintiff, in Fort Smith, Arkansas, all of its right, title, and interest in and to certain invoices and accounts that EPS owed to RJS for services rendered to and received by EPS in the State of Maryland pursuant to the *Subcontractor Agreement* by delivering to

the Plaintiff an *Assignment of Accounts Receivables to Receivables Purchasing Company, Inc..*  A copy of the *Assignment of Accounts Receivables to Receivables Purchasing Company, Inc.* is attached hereto, marked "Exhibit 2", and expressly incorporated herein by reference.  A *Security Agreement* was also executed and is attached hereto and incorporated herein by reference as "Exhibit 3".

8.  On or about July 13, 2003, RJS sold, assigned and transferred to the Plaintiff, in Fort Smith, Arkansas, all of its right, title, and interest in and to certain payments that EPS owed to RJS for services rendered to and received by EPS in the State of Maryland by delivering to the Plaintiff, in Fort Smith, Arkansas a *Purchase and Sale Agreement.*  A copy of the said *Purchase and Sale Agreement* is attached hereto and incorporated herein by reference as "Exhibit 4".

9.  Before the Plaintiff purchased from and paid RJS for any invoices and accounts receivables owed to RJS by Defendant, Plaintiff directly contacted the Defendant to request verification of the accuracy, validity, and true amount owed by the Defendant to RJS on each invoice.  In each instance, the Defendant verified to Plaintiff that each invoice from RJS was accurate and valid and that those amounts were actually owed by the Defendant to RJS.

10.  Plaintiff notified and informed the Defendant of the purchase, assignment, and sale in Fort Smith, Arkansas, to the Plaintiff of various invoices and accounts receivable that the Defendant owed to RJS; and pursuant to its rights under the *Subcontract Agreement* and assignment,  Plaintiff repeatedly demanded that the Defendant pay all such invoices in the future in full directly to the Plaintiff, in Fort Smith,

Arkansas, or in Dallas, Texas as directed by the Plaintiff, but Defendant failed and refused to remit payment.

11.   The Defendant, by and through its officers, agents, and employees, represented to the Plaintiff in Fort Smith, Arkansas, that the invoices from RJS were accurate, valid, and those amounts were actually owed by the Defendant to RJS.  In particular, the Project Manager of EPS, Richard D. Getts, Jr., represented verbally by telephone to Plaintiff in Fort Smith, Arkansas, that the RJS invoices offered for sale to Plaintiff by RJS in Fort Smith, Arkansas, were good, valid, the work and services for such invoices had been performed by RJS, inspected and approved by Defendant, and the RJS invoices would be paid in full.  Further, the Project Manager of Defendant, Richard D. Getts, Jr., also sent to Plaintiff in Fort Smith, Arkansas, by facsimile transmission, RJS invoices that he had approved for payment as good, valid, based upon inspected and approved work, and to be paid in full.  The project manager of Defendant, Richard D. Getts, Jr., also sent to Plaintiff in Fort Smith, Arkansas, by facsimile transmission copies of his signature on approved RJS invoices that he had approved for payment as good, valid, based upon inspected and approved work, and to be paid in full.  The RJS invoices that Project Manager, Richard Getts, Jr., represented as approved by Defendant, verbally and in writing, and sent to Plaintiff in Fort Smith, Arkansas, included but were not limited to:

      a)  RJS Invoice Number 1, on or about July 2, 2003, for $14,835.50;

      b)  RJS Invoice Number 2, on or about July 29, 2003, for $29,628.00;

      c)  RJS Invoice Number 3, on or about August 20, 2003, for $113,099.00;

      d)  RJS Invoice Number 4, on or about October 1, 2003, for $28,800.00;

e)  RJS Invoice Number 5, on or about October 7, 2003, for $32,459.50

f)  RJS Invoice Number 6, on or about October 16, 2003, for $40,000.00;

g)  RJS Invoice Number 8, on or about November 6, 2003, for $66,000.00;

h)  RJS Invoice Number 9, on or about November 19, 2003, for $132,000.00;

i)  RJS Invoice Number 10, on or about December 16, 2003, for $6,000.00;

j)  RJS Invoice Number 11, on or about December 16, 2003, for $22,775.00;

k)  RJS Invoice Number 12, on or about December 16, 2003, for $58,700.00;

l)  RJS Invoice Number 13, on or about January 21, 2004, for $70,400.00,

each a copy of which is attached and incorporated herein as Exhibits No. 5 through 16, respectively.

12.  The Defendant by and through its officers, agents, and employees, including Richard D. Getts, Jr., and Lisa Barberi, represented to Ralph Lewis, President of the Plaintiff, in Fort Smith, Arkansas, that the invoices from RJS were accurate, valid, and those amounts would actually be paid in a timely manner by the Defendant to Plaintiff, in Fort Smith, Arkansas, without any redaction or setoff.  See Affidavit of Ralph Lewis, attached hereto and incorporated herein by reference as "Exhibit No. 17 ".

13.  That the Defendant either knew or believed that such representations were false, or in the alternative, the Defendant knew or believed that it did not have a sufficient basis or information to make such representations.  As the Defendant now claims that the work and services of RJS were improper and not acceptable, the Defendant either falsely and fraudulently represented to Plaintiff that Defendant had already inspected, accepted, and approved the work and services of RJS, before the EPS project manager, Richard Getts, Jr., approved each RJS invoice as an invoice to be paid in full by EPS, and before

Plaintiff purchased the said RJS invoice or EPS knew and believed it did not have a sufficient basis of information to make such material representations to Plaintiff.

14.   The Defendant intended to induce the Plaintiff to act to purchase and pay for the said invoices from RJS in reliance upon the said misrepresentations.  Defendant knew or reasonably should have known that Plaintiff was a factoring company and that Plaintiff wanted to verify that each RJS invoice offered for sale to Plaintiff was good, valid, proper, and would be paid in full without any deduction, setoff or reduction.  Defendant also knew or reasonably should have known that it was important to its subcontractor, RJS, to obtain money quickly from Plaintiff in order to continue to provide work and services to Defendant in a timely manner.  Defendant also knew or reasonably should have known that Plaintiff would not purchase or buy any RJS invoice unless it had already received verbal and written assurances from Defendant, through its Project Manager and other employees, that the RJS invoice offered for sale was good, valid, proper, and would be paid in full without any deduction, setoff, or reduction.  Further, by representing to Plaintiff that it had approved the RJS invoices, Defendant knew or reasonably should have known that Plaintiff would rely upon such advance approval. Defendant also knew or reasonably should have known that in reliance on such advance approval, Plaintiff would purchase the RJS invoices from RJS allowing RJS to continue its work and services for Defendant and allowing Defendant to illegally obtain materialman's and laborer's lien releases from RJS without ever paying RJS for its work and services, because after the factoring assignment to Plaintiff, RJS was no longer owed any money from Defendant and had no basis to refuse to sign all subcontractor lien releases.

15.   That the Plaintiff justifiably relied upon the misrepresentations of the Defendant in purchasing the said invoices from RJS, and as a result, sustained damages. Plaintiff was justified in relying upon the said verbal and written representations sent to it in Fort Smith, Arkansas, by the Defendant's project manager, because advance verbal and written verification from the Contractor is the standard practice of factoring companies before purchasing invoices (accounts receivable) offered for sale.  Plaintiff was justified in relying upon the said verbal and written representations sent to it in Fort Smith, Arkansas, by the Defendant's project manager, as some of the RJS invoices that Defendant represented as being approved for payment, were in fact actually paid to Plaintiff in Fort Smith, Arkansas, before Defendant abruptly and without advance notice stopped paying Plaintiff for the RJS invoices that Defendant had previously represented had been approved for payment in full.

## BREACH OF CONTRACT & PROMISSORY ESTOPPEL

16.   The Plaintiff re-alleges and adopts by reference all the allegations contained in Paragraphs 1 through 15 above.

17.   The Defendant has failed and refused to pay the sum of $300,859.50 which is due and owing to the Plaintiff for invoices the Defendant owed to RJS that had been purchased by and assigned to Plaintiff.

18.   By failing and refusing to pay to the Plaintiff the amounts owed to RJS for invoices that had been sold and assigned to the Plaintiff and for products, equipment, and services performed by RJS in accordance with the Subcontract Agreement, Defendant has failed to fulfill their obligations under the Agreement and are therefore in breach of contract, entitling Plaintiff to compensatory damages, costs and attorney's fees.

19.  The Defendant made statements to the Plaintiff which the Plaintiff justifiably relied upon to its detriment in purchasing the accounts that are the subject of this action. These statements reasonably caused the Plaintiff to believe that the work had been performed in a manner satisfactory to the Defendant, and that the Defendant considered itself bound to pay on the accounts.  The Defendant knew that the Plaintiff would rely upon such statements.  The Plaintiff did in fact rely upon such statements.  As such, the Defendant is barred from raising any defense, such as set-off, which runs contrary to the statements relied upon by Plaintiff.

## UNIFORM COMMERCIAL CODE

20.  The Plaintiff re-alleges and adopts by reference all the allegations contained in Paragraphs 1 through 19 above.

21.  The transaction referred to herein is for an assigned account or other commercial paper as defined by and subject to the Uniform Commercial Code as adopted and codified by the State of New Jersey, more specifically N.J. Stat. Ann. § 12A:9-406.

22.   The Defendant to this action was given proper notice that the Plaintiff had been assigned the right to collect the debt and in fact, the Defendant confirmed to the Plaintiff that the debt was good and payable prior to the Plaintiff purchasing the accounts.

23.  The Defendant failed to make payment to the Plaintiff.  For failure to make payment to the Plaintiff and also for continuing to make payments to the assignor, the Defendant failed to discharge its obligation to Plaintiff under the *Subcontractor Agreement,* and the Defendant is in violation of the Uniform Commercial Code and owes the amount of $300,859.50 to the Plaintiff.

24.  As a direct and proximate result of Defendant's conduct described above, including continuing to fail and refuse to pay what is owed to Plaintiff, the Plaintiff has been damaged in the following manner and amounts:

a)  the sum of THREE HUNDRED THOUSAND EIGHT HUNDRED FIFTY-NINE DOLLARS AND FIFTY CENTS ($300,859.50) in loss of principal owed, said amount being the remaining balance of RJS invoices that the Defendant's project manager represented were good, valid, proper, and  would be paid in full without any deduction, setoff, or reduction, but that Defendant now claims are not good, not valid, not proper, and are all subject to previously undisclosed illegal setoffs and reductions; and

b)  pre-judgment and post-judgment interest on the said some of money;

c)  all its attorney's fees and costs incurred in this litigation, and the events leading up to this litigation.

25.  As Plaintiff's discovery in this matter is incomplete, Plaintiff reserves the right to amend or modify its Complaint in the future.

26.  **PLAINTIFF DEMANDS A TRIAL BY JURY.**

**WHEREFORE,** the Plaintiff, RPC, respectfully prays for judgment against the Defendant, EPS, for actual, compensatory damages in the sum of $300,859.50 for the loss of principal owed to the Plaintiff; for pre-judgment and post-judgment interest on the said sum of money; for all its attorney's fees and costs incurred in this litigation, and the events leading up to this litigation; and for such other and further relief as Plaintiff may be entitled.

Respectfully submitted,

RECEIVABLES PURCHASING
COMPANY, INC.

WALTERS & GASTON
1405 W Center, 3rd Floor
Greenwood, AR  72936
(479)996-2100
ATTORNEYS FOR PLAINTIFF

By: _____
   Bill Walters  Bar No. 71075
   John D. Young  Bar No. 03096

## CERTIFICATE OF SERVICE

   I, John D. Young, do hereby certify that I have electronically filed the foregoing

pleading with the District Court of New Jersey by use of the CM/ECF System on the

_____ day of _____, 2010, which will provide a copy of this filing to:

   Timothy D. Lyons
   GIORDANO, HALLERAN & CIESLA, P.C.
   P.O. Box 190
   Middletown, N.J. 07748
   ATTORNEY FOR DEFENDANT

   /s/  John D. Young_____
   John D. Young